c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANDREW MORAN, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 1:19-CV-01203 |
| VERSUS | JUDGE DRELL |
| AMERICAN HONDA MOTOR CO., INC., *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are a Motion to Remand (ECF No. 10) and a Motion to Amend (ECF No. 17) filed by Plaintiffs Andrew Moran ("Moran") and Chasity Tassin ("Tassin"), individually and on behalf of the decedent Aliyah T. Moran ("Aliyah") (collectively, "Plaintiffs"). Defendant American Honda Motor Co., Inc. ("AHM") opposes both motions. ECF Nos. 12, 19.

Because AHM fails to establish that there is no reasonable basis to predict that Plaintiffs might be able to recover against non-diverse Team Honda, and because Team Honda's Louisiana citizenship destroys diversity, Plaintiffs' Motion to Remand (ECF No. 10) should be GRANTED for lack of jurisdiction.

## I. Background

Plaintiffs filed a Petition for Damages (the "Complaint") in the Twelfth Judicial District Court, Avoyelles Parish. ECF No. 1-1. Moran and Tassin assert a wrongful death and survival action, individually as Aliyah's parents and on Aliyah's behalf. ECF No. 1-1 at 1. Plaintiffs named Defendants AHM, Honda Motor Co., Ltd. ("Honda

1

Motor"), Honda R&D Co., Ltd. ("Honda R&D"), and Petersen Automotive Interests, L.L.C. doing business as Team Honda ("Team Honda") (collectively, "Defendants"). ECF No. 1-1 at 1-2.

On November 18, 2018, Aliyah was operating a 2004 Honda Civic DX VP, Vin 1HGEM22174L001924 ("the Honda vehicle") south on Louisiana Highway 107 when she lost control for unknown reasons during a curve, left the roadway, rolled over, and struck a tree. *Id.* at 3. Aliyah suffered catastrophic injuries and succumbed to her injuries eight days later. *Id.*

Plaintiffs contend the Honda vehicle was designed, developed, manufactured, marketed, assembled, and sold by AHM, Honda Motor, and Honda R&D. *Id.* Plaintiffs assert the Honda vehicle was equipped with frontal airbags which failed to deploy despite frontal damage. *Id.* The Honda vehicle was not equipped with side impact or side curtain airbags. *Id.* Nor was it equipped with Electronic Stability Control ("ESC"). *Id.* Plaintiffs assert the Honda vehicle's occupant restraint system – specifically, the airbag and seatbelt systems – did not perform as it was designed or intended. *Id.* Plaintiffs contend Aliyah would have survived the accident but for the lack of side impact air bags and curtains, the defective frontal airbags, and the defective occupant restraint system. *Id.*

In March of 2018, Moran received a Safety Recall Notice from Honda informing him the Honda vehicle needed to be repaired. *Id.* at 20. Plaintiffs further assert that, on June 27, 2018, Team Honda negligently serviced the frontal airbags on the Honda vehicle. *Id.* at 4.

Plaintiffs assert claims under the Louisiana Products Liability Act ("LPLA") against AHM, Honda Motor, and Honda R&D for unreasonably dangerous design defect, breach of express warranties, and inadequate warning. *Id.* at 4-19. Plaintiffs further assert negligence and misrepresentation claims against AHM, Honda Motor, and Honda R&D. *Id.* Plaintiffs also assert a claim of negligence against Team Honda. *Id.* at 20.

Plaintiffs seek wrongful death and survival damages. *Id.* Plaintiffs seek compensatory damages on behalf of Aliyah for physical pain, suffering and distress; mental pain, suffering, and distress; conscious pain and suffering; past medical expenses; judicial interest from the date of demand; and all other items of damages that may be recoverable. *Id.* at 21. Plaintiffs individually seek compensatory damages for loss of love and affection, past and future; loss of society, past and future; loss of services and support, past and future; loss of benefits, including lost wages, past and future; mental pain, suffering and distress, past and future; funeral expenses; medical expenses; judicial interest from the date of demand; all other items of damage that may be recoverable; and all damages allowable for violation of the LPLA. *Id.* Plaintiffs affirmatively allege that damages exceed $75,000. *Id.*

AHM timely removed, asserting diversity jurisdiction.[1] ECF No. 1. AHM alleges Plaintiffs are citizens of Louisiana. *Id.* at 3. AHM further asserts it is a California corporation with its principal place of business in California. *Id.* AHM contends both Honda Motor and Honda R&D are Japanese corporations, each with

---

[1] It is undisputed that the amount in controversy exceeds the $75,000 jurisdictional threshold. ECF Nos. 1, 1-1.

3

its principal place of business in Japan. *Id.* AHM contends complete diversity of citizenship exists between Plaintiffs and properly joined Defendants AHM, Honda Motor, and Honda R&D. *Id.* AHM further contends Team Honda – a Louisiana limited liability company ("L.L.C.") with one or more members being Louisiana citizens – is improperly joined. *Id.* at 4. AHM asserts there is no reasonable basis for predicting state law might impose liability on Team Honda. *Id.*

AHM answered the Complaint, asserting various affirmative defenses. ECF No. 7. Plaintiffs now seek remand for AHM's failure to establish improper joinder of Team Honda. ECF No. 10. Plaintiffs also seek to amend their Complaint post-removal to add additional parties and allegations. ECF No. 17. Plaintiffs seek to add new Defendants Joaquin Perez ("Perez"), MarketSource Solutions, Inc. ("MarketSource"), and the Allegis Group, Inc. ("Allegis"). ECF No. 17-1 at 2. Plaintiffs seek to include allegations that Perez serviced the airbags while working for MarketSource, a company contracted by Honda Motor. *Id.* at 6. Plaintiffs further assert MarketSource is a subsidiary of Allegis. *Id.* Plaintiffs asserts a cause of action against Perez, MarketSource, and Allegis for Perez's negligent service the Honda vehicle. *Id.* at 29. AHM opposes both motions. ECF Nos. 12, 19.

II. <u>Law and Analysis</u>

    A. <u>Standards governing the Motion to Remand.</u>

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal,

4

based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Jurisdictional facts are determined at the time of removal, not by subsequent events. *See La. v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000, exclusive of interest and costs, and where complete diversity exists between the parties. *See* 28 U.S.C. § 1332(a). The removing party bears the burden of establishing diversity jurisdiction. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). AHM bears that burden. "Any ambiguities are construed against removal and in favor of remand to state court." *Id.* Here, the parties do not dispute that the amount-in-controversy requirement is met, but dispute whether the complete diversity requirement is satisfied.

B. <u>AHM bears the burden of establishing improper joinder.</u>

The first issue before the Court is the alleged improper joinder of Team Honda, a non-diverse Defendant. ECF No. 1. The doctrine of improper joinder is a narrow exception to the complete diversity requirement. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)

(citing 28 U.S.C. § 1441(b)). "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.*

"To establish improper joinder, the removing party must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Cuevas*, 648 F.3d at 249 (quoting *Smallwood*, 385 F.3d at 573). When, as here, the second method is at issue,[2]

> the test is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.

*Cuevas*, 648 F.3d at 249 (internal citations and quotations omitted) (emphasis added). "A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

The removing party "bears a heavy burden of proving that the joinder of the in-state party was improper . . . that is, to show that sham defendants were added to defeat jurisdiction." *Smallwood*, 385 F.3d at 574-75; *see also Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). A court does not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that the plaintiff might do so. *Guillory v. PPG Indust., Inc.*, 434 F.3d 303,

---

[2] AHM does not allege fraud in the pleadings.

309 (5th Cir. 2005) (citations omitted). "Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

### C. The Court may, and does, "pierce the pleadings" to consider the "summary-judgment-type" evidence filed by the parties.

AHM contends Plaintiffs have no possibility of recovery, or "no reasonable basis" of recovery, against non-diverse Team Honda. ECF No. 1 at 4. The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. A court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573 (citations omitted).

However, merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant, does not mean that the joinder of the resident defendant is proper. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004) (citations omitted). In the second setting for the "no reasonable basis" contest, the defendant may challenge the plaintiff's allegations and attempt to demonstrate by "summary-judgment-type" evidence that the plaintiff is unable to prove all the facts necessary to prevail. *International Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016). "[A] court may choose to use either one of these two analyses, but it must use one and only one of them, not neither or both." *Id.*; *see also Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765

7

(5th Cir. 2016) ("[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court.").

The Fifth Circuit cautions against piercing the pleadings, except in limited circumstances. *Smallwood*, 385 F.3d at 537. The Fifth Circuit has instructed that:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (citations omitted). Thus, the summary inquiry determines if there are "discrete and undisputed facts that would preclude recovery against the in-state defendant." *Id.* at 573-74 (citing as examples where "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved as not true"). A court may proceed beyond the pleadings to analyze "whether the defendant has demonstrated that there is no possibility of recovery." *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018) (citing *Smallwood*, 385 F.3d at 573)). Although a court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

Here, AHM relies on and submits summary-judgment-type evidence to establish Plaintiffs have no potential recovery against Team Honda, such that joinder of Team Honda is improper and may be disregarded in determining diversity

8

jurisdiction. ECF Nos. 1 at 4, 12-1 at 1-6. Plaintiffs respond in kind with summary-judgment-type evidence. ECF Nos. ECF Nos. 10, 10-1, 10-2, 10-3.

Thus, in its discretion and to the extent that AHM has presented evidence relevant to improper joinder, the Court pierces the pleadings to identify and evaluate the presence of discrete and undisputed facts that would establish that Plaintiffs have no potential recovery against Team Honda, the in-state Defendant. *Smallwood*, 385 F.3d at 573-74; *see also Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 766 (5th Cir. 2016).

D. **AHM fails to establish that there is no reasonable basis to predict Plaintiffs might recover against non-diverse Team Honda.**

In its Notice of Removal (ECF No. 1), AHM asserts Plaintiffs are citizens of Louisiana. ECF No. 1 at 3. AHM is a California corporation with its principal place of business in California. *Id.* Thus, AHM is a citizen of California. AHM further alleges Honda Motor and Honda R&D are Japanese corporations, each with its principal place of business in Japan. *Id.* Thus, Honda Motor and Honda R&D are citizens of Japan. AHM asserts complete diversity of citizenship among the properly joined parties. *Id.*[3]

AHM further alleges in-state Defendant Team Honda is improperly joined. ECF No. 1 at 3-4. AHM argues there is no reasonable possibility of recovery against Team Honda. *Id.* at 4. AHM asserts the "repair" and "service" alleged in Plaintiffs' Complaint (ECF No. 1) pursuant to the "Safety Recall" was performed by a technician who was neither employed by nor under the control of Team Honda. *Id.*

---

[3] It is undisputed that the amount in controversy is met. ECF Nos. 1, 1-1.

9

In its Notice of Removal, AHM alleges that no Team Honda employee or agent performed the work referenced in Plaintiffs' Complaint. *Id.* In support, AHM submits the affidavit of Todd Branch ("Branch"), Fixed Operations Director for Team Honda. *Id.*; *see also* ECF No. 1-2. Branch attests that the Honda vehicle was subject to a safety recall that called for replacing its driver and passenger side airbag inflators. *Id.* at 2. He attests the recall work was not performed by Team Honda or on property owned or maintained by Team Honda. *Id.* Branch states that the work was performed by a technician who was employed by a third-party vendor with which AHM contracted directly. *Id.*

Branch further attests that Team Honda did not employ, oversee, schedule, direct, or supervise the technician who performed the recall work on the Honda vehicle. *Id.* Team Honda's involvement was limited to processing warranty repair paperwork after the recall work on the Honda vehicle was completed. *Id.*

Plaintiffs seek remand, arguing that AHM fails to demonstrate Plaintiffs have "no possibility of recovery" against in-state Defendant Team Honda. ECF No. 10 at 6. Plaintiffs assert AHM has not identified the third-party vendor that performed the repair work. *Id.* Plaintiffs counter with Moran's Affidavit, attesting he received an airbag recall notice (ECF No. 10-2) from Honda. ECF No. 10-1. Moran attests that he called the number on the flier and scheduled an appointment to have the airbag replaced at his mother's home in Alexandria, Louisiana. *Id.* Moran further attests that after the work was completed, he requested a copy of the repair work

10

(ECF No. 10-3) from Walker Honda, who informed him that the repair work was completed by Team Honda in Baton Rouge. ECF No. 10-1.

The "repair report" is a VIN Inquiry Acknowledgment (ECF No. 10-3), including the warranty repair history. The repair history has "Team Honda (Baton Rouge)" handwritten on the top of the page. ECF. No. 10-3 at 2. Plaintiffs argue that the repair report provides repair dealer code 207748, which they state is Team Honda. ECF No. 10 at 2. Plaintiffs further assert AHM fails to identify the third-party vendor it alleges is responsible for the repairs. *Id.* at 3, 5. Plaintiffs contend the dueling evidence requires a credibility determination by the trier of fact and provides a reasonable basis for recovery against Team Honda. *Id.* at 5.

AHM opposes remand. ECF No. 12. AHM notes that it is undisputed that Plaintiffs are Louisiana citizens and that Team Honda is the only non-diverse Defendant. ECF No. 12. AHM states that Plaintiffs' argument suggests Branch's affidavit is untruthful. ECF No. 12 at 3. AHM contends Plaintiffs submit no admissible evidence that Team Honda or anyone for whom Team Honda is responsible performed the alleged negligent repair. *Id.* AHM argues that the telephone number Moran attests he called for scheduling the repair is not alleged to be assigned to Team Honda. *Id.* at 4. AHM contends the recall notice (ECF No. 10-2) bears the logos of Honda, NHTSA, and the U.S. Department of Transportation, but nowhere references Team Honda. *Id.*

AHM argues that Moran's attestation that Walker Honda informed him that the repair work was completed by Team Honda in Baton Rouge is inadmissible

11

hearsay. *Id.* AHM argues the inadmissible "repair report and alleged statement by Walker Honda do not and cannot refute Branch's affidavit. *Id.* at 5. AHM asserts the alleged "repair report" is a "VIN Inquiry Acknowledgment" and that Moran fails to establish it falls within any exception to any hearsay rule. *Id.* at 4.

AHM also contends that the alleged out-of-court statement by an unidentified person of non-party Walker Honda is irreconcilable with Moran's attestation that the air bag was replaced at his mother's home. *Id.* at 5. AHM further argues that even assuming that "the repair dealer code 207748" is in fact Team Honda, it does not refute Branch's attestation that Team Honda's involvement was limited to processing warranty repair paperwork after the recall work was completed. *Id.*

At this stage, a district court is not to apply a summary judgment standard, but "rather a standard closer to the Rule 12(b)(6) standard." *McKee v. Kansas City Southern Railway Co.*, 358 F.3d 329, 332 (5th Cir. 2004) (citing *Travis*, 326 F.3d at 648-649). The Fifth Circuit cautions against proceeding beyond the summary process and into a resolution of the merits. *Smallwood*, 385 F.3d at 574. A court "may consider a wide array of evidence when ruling on a motion to remand and exercise discretion over the types of evidence it considers. *Cramer v. Logistics Co., Inc.*, 2014 WL 652319, at *4, n.5 (W.D. Tex. Feb. 19, 2014) (citing *Smallwood*, 385 F.3d at 573-74). Therefore, a court may – and does – consider Moran's affidavit along with Plaintiffs' allegations in its ruling. *See, e.g., Holmes v. TV-3, Inc.*, 141 F.R.D. 692, (W.D. La. 1991) ("When examining Rule 12(b) motions, the court has discretion to consider many types of evidence, even hearsay, if it feels that it is substantive and

12

comprehensive enough to facilitate disposition of the action."); Wright & Miller, 5C Fed. Prac. & Proc. § 1364 (3d ed. 2004) (same); *see also Cantu v. TitleMax, Inc.*, 5:14-CV-628-RP, 2015 WL 4526987, at *2 (W.D. Tex. July 23, 2015) ("Whether the evidence submitted to establish such prima facie case will ultimately be admissible at trial is not relevant at this stage of the proceedings.).

In support of its opposition, AHM also submits the Affidavit of James Jongkind ("Jongkind"), a Technical Specialist for AHM, attesting to the fact that the recall repair was performed by third-party vendor "Marketsource." *Id.* at 6, ECF No. 12-1. Jongkind attests that he is personally familiar with the "Safety Recall" referenced by Plaintiffs. *Id.* at 2. He attests that AHM used various means to facilitate the airbag recalls, including sending canvassers to personally visit the last known address of the vehicles subject to the recall. *Id.* The canvasser would offer to arrange a recall repair at an authorized Honda dealership or, if requested, schedule a technician to perform a mobile repair. *Id.* Jongkind further attests that Branch's affidavit was correct that the recall work was not performed by Team Honda or on property owned or maintained by Team Honda. *Id.* Jongkind also attests that Team Honda's involvement was limited to processing warranty repair paperwork after the recall work was completed. *Id.* at 3.

Attached to Jongkind's affidavit is a "Mobile Repair Authorization" on the recall repair. ECF Nos. 12-1 at 3, 6. He attests this document was generated at or near the time of the recall repair and was and is kept in the regularly conducted activity of AHM. *Id.* Jongkind attests AHM contracted with MarketSource to hire

13

canvassers and technicians to perform mobile repair. *Id.* Jongkind attests the Mobile Repair Authorization identified the MarketSource-hired mobile technician. *Id.* The Mobile Repair Authorization Form would be turned in to the dealership, along with the parts removed from the vehicle, and the warranty administrator at the dealership would submit the warranty claim to AHM. *Id.* at 4.

Jongkind attests that each warranty claim includes a DPTS number to be processed – a number assigned to certain dealership employees and AHM employees. *Id.* Jongkind attests MarketSource-procured personnel, including canvassers and technicians, were not issued DPTS numbers. *Id.* Where a contingent employee performed a recall repair, the DPTS I.D. of an AHM associate was provided on the Mobile Repair Authorization Form so that the warranty administrators at the dealership could use the DPTS number to submit a warranty claim to AHM. *Id.* This was the procedure followed in Moran's case. *Id.*

Jongkind authenticates and attests to the Mobile Repair Authorization Form which was delivered to Team Honda by MarketSource in connection with Team Honda's submission of the warranty claim. ECF No. 12 at 6. The form includes Moran's signature in the "Customer Signature" line at the bottom of the page. ECF No. 12-1 at 4. Joaquin Perez from MarketSource is identified as the person who performed the recall repair, that both the driver airbag and passenger airbag inflators were replaced, and that the DPTS I.D. of an AHM associate, Benjamin Skirtech, is referenced. *Id.* The form also identifies the canvasser as "Tosha" as well as the case numbers related to the canvassing effort for Moran's vehicle. *Id.* at 4-5.

14

The summary inquiry determines if there are "discrete and undisputed facts that would preclude recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-574. However, the Court must not decide whether the plaintiff will actually or even probably prevail on the merits but must look only for a reasonable probability that plaintiff may do so. *Travis*, 326 F.3d at 648. The Court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the Plaintiffs. *Travis*, 326 F.3d at 649. Here, the evidence before the Court amounts to competing affidavits and disputed questions of fact. Therefore, in-state Defendant Team Honda is a properly joined party.

### III. Conclusion

Because AHM fails to show that there is no reasonable basis to predict that Plaintiffs might be able to recover against non-diverse Team Honda, and because Team Honda's Louisiana citizenship destroys diversity;

IT IS RECOMMENDED that Plaintiffs' Motion to Remand (ECF No. 10) should be GRANTED for lack of jurisdiction and this case be REMANDED to the Twelfth Judicial District Court, Avoyelles Parish.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed,

z
w

unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 20th day of July 2020.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE